USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC#: _____
DATE FILED: 3/26/2024

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| FINDERS, et al., <br><br> Plaintiff, <br><br> -against- <br><br> BK 19 INC., et al., <br><br> Defendants. | 19-cv-11802 (ALC) <br><br><br><br> **OPINION & ORDER** |

**Andrew L. Carter, Jr., United States District Judge:**

Plaintiffs Gavin and Clair Villard-Finders ("Plaintiffs"), initiated the present breach of contract action against Defendants Babak Khorrami ("Khorrami"), Peter Rabasco ("Rabasco"), BK 19 Inc., BK 17 Inc., BMS 1989 Inc., Green Devil 22 Inc., and BK 18 Inc. ("Corporate Defendants") (collectively "Defendants"), alleging that Khorrami breached their shareholder agreement and funneled shareholder funds through the Corporate Defendants. On January 24, 2023, Plaintiffs informed the Court that the Parties had reached a "global settlement" with all Defendants. ECF No. 132. Plaintiffs now seek to enforce a purported settlement agreement that they allege is binding pursuant to Defendant Khorrami's counsel's text message and email correspondences. ECF No. 139-2. Defendant Khorrami has not filed an opposition to Plaintiff's motion.

After careful consideration, Plaintiffs' request for hearing on the motion is **DENIED** and the motion to enforce the settlement agreement is hereby **DENIED**.

## BACKGROUND

The Court assumes the parties' familiarity with the underlying facts of this case and recounts here only those facts relevant to the present motion. On January 24, 2023, Plaintiffs'

1

and Khorrami/Corporate Defendants' counsel engaged in a text message exchange which read, in relevant part:

> Plaintiffs' Counsel: "20k settlement 3k upon execution 833.33 for 20 months I believe With the guarantee . We can close"
> Khorrami/Corporate Defendants' Counsel: "Per our subsequent discussion, the balance of $17,000.00 shall be paid over 24 months@ $708.33 per month for the first 23 months with the final month's payment in the amount of $708.41, for a total of $17,000.00. Lastly as per our last conversation and all prior offers, this settlement is contingent on your settling with Peter Rabasco. Failure to settle with Rabasco shall mean a failure of all potential settlements."
> Plaintiffs' Counsel: "We are resolved and in agreement"
> Khorrami/Corporate Defendants' Counsel: Chris: "Assuming you intend to reduce the Agreement(s) to writing, I would request a Non-Disclosure provision in the Agreement. . . ."
> Plaintiffs' Counsel: "I am sure we can find that [*sic*] indicates the settlement agreement will not be discussed to others above and beyond the necessary people. We will also need to add language to address our previous agreement on the 1500 legal fee. We agreed to have it paid over time but we did not confirm dates of the payments. I suggest it be paid over 24 months with $62.50 per month."
> Khorrami/Corporate Defendants' Counsel: "I will discuss with my client, but I don't think that will be a problem."

ECF No. 139-2 at 4-6. Plaintiffs' counsel then emailed to defense counsel a draft settlement agreement for defense counsel's review. *Id.* at 3-15. Defense counsel returned their print revisions to the agreement to Plaintiffs' counsel on January 30, 2023. *Id.* In the body of the email, defense counsel stated of the edits that "[a]ssuming all are fine, please have your office make the changes and return to me." *Id.* at 8. Defense counsel did not sign the agreement. Plaintiffs' counsel sent an updated agreement with defense counsels' edits incorporated on January 31, 2023 via email, but defense counsel did not reply. On February 7, 2023, defense counsel informed plaintiffs' counsel that his client did not wish to be bound by the settlement agreement, citing financial difficulties as a precipitating concern. *Id.* at 28. Defense counsel

2

then made a settlement offer with lesser financial terms via text which plaintiffs' counsel declined. *Id.* at 28-30.

In their motion for enforcement of settlement, Plaintiffs advance several arguments for their position that a binding settlement agreement existed between the Parties. First, they claim that counsel's January 24, 2023 text message conversation created a binding settlement agreement. ECF No. 139-1 at 2. In support of this argument, Plaintiffs argue that "[a]ll of the essential material terms were reached between the Plaintiffs and the BK 19 Defendants, occurred [*sic*] on January 24, 2023." *Id.* Second, they also argue that the Parties validly entered into the written settlement agreement edited and sent between counsel. *Id.* at 7.

## STANDARD OF REVIEW

"A district court has the power to enforce summarily, on motion, a settlement agreement reached in a case that was pending before it." *Meetings & Expositions, Inc. v. Tandy Corp.*, 490 F.2d 714, 717 (2d Cir. 1974) (internal citations omitted). A settlement agreement is a "contract that is interpreted according to general principles of contract law." *Omega Eng'g, Inc. v. Omega, S.A.*, 432 F.3d 437, 443 (2d Cir. 2005). A "motion to enforce a settlement agreement is fundamentally a claim for breach of contract." *United States v. Prevezon Holdings, Ltd.*, 289 F. Supp. 3d 446, 450 (S.D.N.Y. 2018) (internal quotation marks omitted) (quoting *Hendrickson v. United States*, 791 F.3d 354, 358 (2d Cir. 2015)). When a court determines that a settlement agreement was in fact reached, that agreement must be binding, and "it is an elementary principle of contract law that a party's subsequent change of heart will not unmake a bargain already made." *Omega*, 432 F.3d at 445.

Under New York law, an enforceable settlement agreement requires "an offer, acceptance, consideration, mutual assent and intent to be bound." *Register.com, Inc. v. Verio,*

3

*Inc.*, 356 F.3d 393, 427 (2d Cir. 2004). The parties must be in agreement "on all essential terms," *Opals on Ice Lingerie v. Bodylines Inc.*, 320 F.3d 362, 372 (2d Cir. 2003) (citation omitted), which consists of "all the issues perceived to require negotiation." *Brown v. Cara*, 420 F.3d 148, 153 (2d Cir. 2005) (citation omitted). "When a preliminary agreement is reduced to a writing signed by the parties or their representatives, the plain language of the agreement is the best evidence of the parties' intent." *Wang v. Int'l Bus. Machs. Corp.*, No. 11-cv-02992 (VB), 2014 WL 6645251, at *3 (S.D.N.Y. Oct. 7, 2014) (citation omitted); *see also Ciaramella v. Reader's Digest Ass'n, Inc.*, 131 F.3d 320, 322 (2d Cir. 1997). This includes agreements written in an email. *Green v. N.Y.C. Transit Auth.*, No. 15-CV-08204 (ALC) (SN), 2022 WL 2819738, at *2 (S.D.N.Y. May 10, 2022), *report & recommendation adopted*, No. 15-CV-08204 (ALC) (SN), 2022 WL 2819578 (S.D.N.Y. July 19, 2022) (quoting *Hostcentric Techs., Inc. v. Republic Thunderbolt, LLC*, No. 04-CV-1621 (KMW) (AJP), 2005 WL 1377853, *5-10 (S.D.N.Y. June 9, 2005)); *see also Elliot v. City of N.Y.*, No. 11-CV-7291 (RWS), 2012 WL 3854892, at *2 (S.D.N.Y. Sept. 5, 2012) (finding an executed term sheet and email from defense counsel confirming agreement was sufficient to create a binding agreement). "The intention of the parties on this issue is a question of fact, to be determined by examination of the totality of the circumstances." *Ciaramella*, 131 F.3d at 322. A plaintiff bringing a breach of contract claim bears the burden of proving the existence of a contract by a preponderance of the evidence. *Pisani v. Westchester Cty. Health Care Corp.*, 424 F.Supp.2d 710, 719 (S.D.N.Y. 2006).

"'[O]nce reached, a settlement agreement constitutes a contract that is binding and conclusive and the parties are bound to the terms of the contract even if a party has a change of heart between the time of the agreement to the terms of the settlement and the time it is reduced to writing.'" *Murphy v. Inst. of Int'l Educ.*, No. 19-CIV-1528 (ALC) (RWL), 2020 WL

6561603, at *4 (S.D.N.Y. July 27, 2020), *report & recommendation adopted*, No. 19-CV-1528 (ALC), 2020 WL 5658628 (S.D.N.Y. Sept. 23, 2020), *aff'd*, 32 F.4th 146 (2d Cir. 2022) (quoting *Elliot*, 2012 WL 3854892, at *2 (citation omitted).

"Whether a district court should apply federal or state law in order to decide a motion to enforce a settlement has not yet been resolved by . . . the Second Circuit." *Green*, 2022 WL 2819738, at *2 (quoting *Powell v. Omnicom*, 497 F.3d 124, 129 n.1 (2d Cir. 2007)) (quotation marks omitted). The Second Circuit has noted that "there is 'no material difference' between New York law and federal common law on this issue" *Id.* (quoting *Ciaramella*, 131 at 322); *see also Figueroa v. N.Y.C. Dep't of Sanitation*, 475 F. App'x 365, 366 (2d Cir. 2012) (same).

The Second Circuit has "articulated several factors that help determine whether the parties intended to be bound in the absence of a document executed by both sides." *Winston*, 777 F.2d at 80. The court considers:

> (1) whether there has been an express reservation of the right not to be bound in the absence of a writing; (2) whether there has been partial performance of the contract; (3) whether all of the terms of the alleged contract have been agreed upon; and (4) whether the agreement at issue is the type of contract that is usually committed to writing.

*Id.* These factors "may be shown by 'oral testimony or by correspondence or other preliminary or partially complete writings.'" *Id.* at 81 (quoting Restatement (Second) of Contracts § 27 comment c (1981)). No factor is decisive. *Ciaramella*, 131 F.3d at 323. "[T]he analysis ultimately hinges on the parties' intent demonstrated through their objective communications and conduct." *In re Motors Liquidation Co.*, 580 B.R. 319, 344 (Bankr. S.D.N.Y. 2018).

## DISCUSSION

I. **Enforceability of the Settlement Agreement**
   a. **Express Reservation of the Right Not to Be Bound**

5

"The first factor, the language of the agreement, is 'the most important'" in considering whether the parties intended to be bound. *Adjustrite Sys., Inc. v. GAB Bus. Servs., Inc.*, 145 F.3d 543, 549 (2d Cir. 1998) (quoting *Arcadian Phosphates, Inc. v. Arcadian Corp.*, 884 F.2d 69, 72 (2d Cir. 1989); *see also Hernandez v. Fresh Diet Inc.*, No. 12-CV-4339 (ALC), 2017 WL 4838328, at *3 (S.D.N.Y. Oct. 25, 2017). If there is a writing between the parties "show[ing] that [defendants] did not intend to be bound," a court may "look no further than this factor." *Kaczmarcysk v. Dutton*, 414 Fed.App'x. 354, 355 (2d Cir. 2011) (citation omitted).

The first factor heavily favors Khorrami/Corporate Defendants. Although there is no express reservation of rights, the Agreement itself does contain an implied reservation of rights. First, the agreement contains a provision which specifically references written execution: "This Agreement is the entire Agreement between the parties with respect to the subject matter hereof and supersedes all prior and contemporaneous oral and written agreements and discussions. This Agreement may be amended only by an agreement in writing and signed by all parties." ECF No. 139-2 at 23. Such language is "persuasive evidence that the parties did not intend to be bound prior to the execution of a written agreement." *Kaczmarcysk*, 414 Fed.App'x. at 355 (quoting *Ciaramella,* 131 F.3d at 324). Courts have routinely found that this language demonstrates the parties' intentions not to be bound until written execution. *Nieves v. Cmty. Choice Health Plan of Westchester, Inc.*, No. 08 Civ. 0321, 2011 WL 5533328, at *4 (S.D.N.Y. Aug. 31, 2011). Second, the agreement also refers to execution: "This Agreement may be executed in separate counterparts[.]" ECF No. 139-2 at 23. Such references to execution also demonstrate an intent not to be bound until then. *See Hernandez*, 2017 WL 4838328, at *3 (finding an "Agreement may be executed in any number of counterparts" to indicate an intent by the parties to not be bound until execution); *Nieves*, 2011 WL 5533328, at *5 (same). Third, the

6

agreement contains blank signature lines for each party. *Nieves*, 2011 WL 5533328, at *5 (finding that blank signature lines "indicate that the parties contemplated the moment of signing as the point when the settlement would become binding") (citing *Ciaramella*, 131 F.3d at 324).

The language in the agreement strongly demonstrates that the agreement would not be binding barring execution by all parties. Although finding that this factor favors invalidity is enough to deny the Plaintiffs' motion to enforce settlement, the balance of the other factors also bolsters this conclusion.

### b. Partial Performance

This factor considers "whether one party has partially performed, and that performance has been accepted by the party disclaiming the existence of an agreement." *R.G. Grp., Inc. v. Horn & Hardart Co.*, 751 F.2d 69, 75-76 (2d Cir. 1984). "Partial performance requires some actual performance of the contract" and a party "must have conferred something of value upon [the other] which [was] accepted." *P.A. Bergner & Co. v. Martinez*, 823 F.Supp. 151, 157 (S.D.N.Y. 1993). "Courts have considered various factors that indicate partial performance, including payment of at least some part of the settlement amount and mutual cessation of litigation activities." *Xie v. Caruso, Spillane, Leighton, Contrastano, Savino & Mollar, P.C.*, 632 F. Supp. 3d 262, 268 (S.D.N.Y. 2022). This "factor has 'the least sway with the court.'" *Id.* (quoting *Walker v. City of N.Y.*, No. 05 Civ. 0004, 2006 WL 1662702, at *8 (E.D.N.Y. June 15, 2006)).

Here, Plaintiffs argue that they partially performed the agreement "by reaching a settlement with Rabasco which was a condition of settlement and executed the settlement with Rabasco on February 1, 2023." ECF No. 139-2 at 5. Interestingly, Plaintiffs also argue later in their motion that the Rabasco settlement was in fact a "condition precedent of the BK 19

7

Defendants settlement." ECF No 139-1 at 8.  As Plaintiffs themselves rightfully point out, a condition precedent is "an event not certain to occur, which must occur, unless its non-occurrence is excused, before performance under a contract becomes due." *Merritt Hill Vineyards v. Windy Heights Vineyard*, 460 N.E2d 1077 (1984); *Id.*  It is not clear to this Court how it can be that the Rabasco Settlement was both a *condition precedent* to performance of the Khorrami/Corporate Defendants settlement and also itself *partial performance* of the Khorrami/Corporate Defendants settlement.  Nevertheless, we assume *arguendo* here that the Rabasco Settlement constituted some partial performance of the agreement.

Moving on, "[t]he fact that the parties abandoned litigation activities because they believed a settlement was imminent" does more clearly support Plaintiffs' contention that partial performance had occurred in this case.  *P.A. Bergner & Co.*, 823 F.Supp. at 157.  The Parties' January 24, 2023 status reports to the Court represented that a settlement had been reached, and as such, that they would stay the proceedings.  ECF No. 132.

Finally, we consider whether Defendants accepted Plaintiffs partial performance.  The record unambiguously displays that Defendants did not accept Plaintiffs' partial performance.  Defendants did not sign or return the written agreement or initiate any payment as required.  *See Hernandez*, 2017 WL 4838328, at *4.

Upon consideration, the partial performance factor is at best neutral as to whether an enforceable agreement existed between the Parties.

   c. **No Open Material Terms**

Preliminary agreements can create binding obligations "when the parties agree on all the points that require negotiation (including whether to be bound) but agree to memorialize their agreement in a more formal document." *Adjustrite*, 145 F.3d at 548.  "A settlement in principle

is not final where material terms that form part of the plaintiff's consideration for dropping her legal claims are not agreed upon." *Xie*, 632 F.Supp. 3d at 269. Minor or technical changes are relevant against finding a contract binding "only if they show there were points remaining to be negotiated such that the parties would not wish to be bound until they synthesized a writing 'satisfactory to both sides in every respect.'" *Powell*, 497 F.3d at 130 (quoting *Winston*, 777 F.2d at 82–83). In *Alvarez v. City of N.Y.*, the court found the "written settlement agreement [] was substantially complete" where "the parties had extensively negotiated the language of the agreement, and only a couple of items remained." 146 F. Supp. 2d 327, 337 (S.D.N.Y. 2001) ("While the written agreement was not signed, the terms of the agreement had been largely reduced to writing. Hence, this factor weighs in favor of enforcing the agreement.")

First, we consider Plaintiffs' contention that counsels' January 24, 2023 text message exchange contained all relevant terms and created a valid and enforceable agreement. The text messages themselves disprove Plaintiffs' contention. While counsel came to an agreement on some of the relevant terms of the settlement, namely the amount to be paid to Plaintiffs and the fact that settlement would be "contingent" upon settlement with Defendant Rabasco, the Parties did not agree to all relevant material terms. ECF No. 139-2 at 5. Counsel for both sides failed to manifest objective assent to the imposition of two material terms—the nondisclosure provision and the legal fees. *Id.* at 5-6. Plaintiffs' counsel's response to the request for a nondisclosure provision did not objectively establish assent to that term, but rather an indication that counsel believed his clients would be amenable to such a term when presented to them. Additionally, Defense counsel's statement that he would "discuss" Plaintiffs' request for legal fees "with [his] client" also clearly establishes that the material financial term had not yet been resolved as between the Parties.

Second, as there was a subsequent written agreement drafted and negotiated by the Parties, we also consider whether this agreement contained any outstanding material terms. With regard to the final written agreement sent between the Parties on January 31, 2023, Defendants have not pointed to and there does not exist any substantive points of disagreement that remained over the draft settlement agreement. ECF No. 139-2 at 17. Thus, "[t]he evidence provided to the Court indicates that the parties had agreed to all material . . . terms of the Settlement Agreement." *In re Motors*, 580 B.R. at 360. Because the Parties agreed to all provisions of the written settlement award despite their failure to do so in their text message correspondences, the third *Winston* factor weighs in favor of finding the Agreement enforceable and binding.

### d. Type of Contract

"Settlements of any claim are generally required to be in writing or, at a minimum, made on the record in open court." *Ciaramella*, 131 F.3d at 326. Under N.Y. C.P.L.R. § 2104, an out-of-court settlement agreement must be in writing and signed. *Id.* However, it is an open question of whether C.P.L.R. § 2104 applies in federal court. *Hernandez*, 2017 WL 4838328, at *2 (S.D.N.Y. Oct. 25, 2017) (citing *Figueroa*, 475 Fed.App'x. at 366). Because "there is no material difference between the applicable [New York] state law or federal common law standard" *Ciaramella*, 131 F.3d at 322, and the written agreement states it is governed by New York law, ECF No. 139-2 at 22, and C.P.L.R. § 2104 suggests a strong preference in New York law for committing settlement agreements to writing, *Hernandez*, 2017 WL 4838328, at *4 (citations omitted), this agreement appears to be of the kind made in writing.

Because the agreement was reduced to writing, this factor favors enforcement of the agreement because the agreement was reduced to writing

10

In considering the totality of circumstances, Plaintiffs have failed to establish that the unsigned settlement agreement is enforceable. The *Winston* factors disfavor enforcement of the agreement, as the parties did not intend to be bound prior to its execution.

## CONCLUSION

For the reasons set forth by the Court, Plaintiffs' motion to enforce the settlement agreement, ECF No. 139, and associated request for a hearing are hereby **DENIED** as to Khorrami and the Corporate Defendants. The Parties are hereby **ORDERED** to file a joint status report informing the Court of the pendency of this action by April 9, 2024.

**SO ORDERED.**

**Dated:**    **March 26, 2024**
         **New York, New York**

_____
**ANDREW L. CARTER, JR.**
**United States District Judge**